[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 173.]

TOLEDO BAR ASSOCIATION *v*. DZIENNY.

[Cite as *Toledo Bar Assn. v. Dzienny*, 1995-Ohio-307.]

*Attorneys at law—Misconduct—Stayed six-month suspension—Conduct involving dishonesty, fraud, deceit, or misrepresentation—Neglect of an entrusted legal matter—Attempting to limit liability to client for malpractice.*

(No. 94-1844—Submitted January 25, 1995—Decided May 10, 1995.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 94-07.

_____

{¶ 1} In a four-count complaint filed on February 22, 1994, relator, Toledo Bar Association, charged respondent, Michael A. Dzienny of Toledo, Ohio, Attorney Registration No. 0037618, with multiple Disciplinary Rule violations. Count I alleged violations of DR 6-101(A)(2) (handling a legal matter without adequate preparation) and 6-101(A)(3) (neglect of an entrusted legal matter). Count II alleged violations of DR 7-101(A)(1) (failure to seek lawful objectives of client), 7-101(A)(2) (failure to carry out contract of employment) and 7-101(A)(3) (act which prejudices client). Counts III and IV alleged violations of DR 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation) and Count IV alleged a violation of DR 6-102(A) (attempting to limit liability to client for malpractice). Respondent answered, admitting most of the factual allegations presented in the complaint. Respondent denied that any of those allegations constituted ethical violations. The matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court on June 22, 1994.

**{¶ 2}** The panel found violations only of DR 1-102(A)(4) and 6-102(A). The panel recommended a six-month suspension, itself suspended. The board adopted the findings of fact and conclusions of law of the panel.

**{¶ 3}** On October 10, 1989, respondent was hired to represent Rhonda Kimmelman and her husband with respect to injuries she allegedly sustained during a medical diagnostic procedure at Flower Hospital on September 25, 1989. On September 11, 1990, respondent sent letters to the hospital and its employees, pursuant to R.C. 2305.11(B)(1), notifying them that a medical malpractice lawsuit was being considered. The statute of limitations for filing such an action was extended for one hundred eighty days by virtue of filing the notice. The statute of limitations, as extended, expired on March 11, 1991. Respondent had not filed an action against the hospital or its employees by that date.

**{¶ 4}** On March 26, 1991, respondent filed a lawsuit, based upon the above claim, naming as defendants Flower Hospital, "John Doe" and "Jane Doe." The hospital filed a motion to dismiss the suit against it and its employees because the statute of limitations had expired prior to the filing of the lawsuit. The trial court granted the motion to dismiss on September 12, 1991.

**{¶ 5}** In the interim between the filing of the motion to dismiss and the grant of that motion, respondent filed a motion to amend the complaint to identify the "John Doe" defendant as the manufacturer of the equipment used to perform the diagnostic test upon his client. The motion to amend was granted by the trial court on September 12, 1991, and an amended complaint was filed September 16, 1991. On November 20, 1992, the respondent took the depositions of the technicians who had operated the diagnostic machine.

**{¶ 6}** In a letter dated November 24, 1992, respondent advised the Kimmelmans that, based upon the information obtained in the depositions of the technicians taken four days earlier, the clients should take a $1,000 settlement offered by the equipment manufacturer. He further advised them that, in his

2

opinion, they did not have a claim against the hospital or its employees. This opinion was in a sense correct, given the fact that the complaint had been dismissed thirteen months earlier.

**{¶ 7}** In Count II, relator alleged that respondent had agreed to the settlement of $1,000 from the manufacturer of the diagnostic equipment on behalf of his clients, without their permission. Respondent denied that allegation, stating that it was only a proposed settlement. The board found that the allegation had not been proved by clear and convincing evidence and therefore dismissed Count II.

**{¶ 8}** By a letter dated December 17, 1992, the Kimmelmans discharged respondent as their attorney, and subsequently obtained other counsel. At no time prior to that date had respondent notified his clients that the case against the hospital and technicians had been dismissed. It was not until the clients consulted other counsel that they discovered the lawsuit had been dismissed and the dismissal was the result of the respondent's failure to timely file the complaint.

**{¶ 9}** The new attorney negotiated a settlement with respondent and his professional liability insurance carrier in the sum of $12,500, with respondent paying $10,000 out of his own funds. The clients received another $1,000 from the settlement negotiated by respondent.

**{¶ 10}** Based upon the above facts, the board found that the respondent had committed misconduct by engaging in a continuing course of conduct of misleading his clients concerning the status of their case and covering up his negligence in missing the statute of limitations. The board found that the respondent had violated both DR 1-102(A)(4) and 6-102(A). In recommending a sanction for respondent's misconduct, the board considered the fact that the respondent had no previous history of disciplinary complaints and that he had expressed remorse for his actions. However, the board recommended, based upon the lengthy period of deception, that the respondent be suspended for six months, with that suspension stayed. The board did not recommend monitoring or probation.

---

*Scalzo, Cherry & Geudtner* and *Jonathan B. Cherry*; and *M. Susan Swanson*, for relator.

*Marshall & Melhorn* and *Richard M. Kerger*, for respondent.

---

**Per Curiam.**

{¶ 11} In his only objection to the board's findings and recommendation, respondent argues that he should receive a public reprimand instead of the six-month stayed suspension recommended by the board. In its objection to the board's report, relator argues that the board erred in not finding that respondent's conduct also violated DR 6-101(A)(3) and 7-101(A)(2).

{¶ 12} In light of the significant and lengthy deception of his clients, the respondent's argument that he deserves the lightest punishment possible under the rules is without merit. Respondent relies solely upon *Portsmouth Bar & Library Assn. v. Stevenson* (1994), 69 Ohio St.3d 37, 630 N.E.2d 337, for his position that he should receive a public reprimand. Although *Stevenson* also involved an attorney's failure to timely file suit and subsequent deception of his client as to the status of the suit, the attorney in *Stevenson* eventually informed his client of his misconduct. In this case, respondent's deceptions would never have been uncovered if the clients had not retained another attorney to look into the matter. As such, respondent's misconduct is worse than that committed by the attorney in *Stevenson* and therefore deserves a greater punishment.

{¶ 13} In similar cases of misconduct, we have consistently imposed a suspension or a suspended suspension as opposed to a public reprimand. In *Columbus Bar Assn. v. Nichols* (1991), 61 Ohio St.3d 546, 575 N.E.2d 799, we found that a one-year suspended suspension was appropriate where the attorney had failed to timely file two lawsuits. In *Lorain Cty. Bar Assn. v. Motsch* (1993), 66 Ohio St.3d 56, 607 N.E.2d 1069, we likewise held that deceiving clients about the

4

fact that a suit had been filed on their behalf when that was not the case deserved a suspended six-month suspension.

{¶ 14} Relator argues that the board erred in not finding that respondent's conduct constituted a violation of DR 7-101(A)(2). However, relator asserted a violation of that rule only in connection with Count II of the complaint. As noted above, the board dismissed that count because it had not been proved by clear and convincing evidence. We defer to the board and decline to disturb that finding. See *Cincinnati Bar Assn. v. Fennell* (1980), 63 Ohio St.2d 113, 119, 17 O.O.3d 68, 72, 406 N.E.2d 1129, 1133.

{¶ 15} Relator also argues that the board erred in not finding that the failure of respondent to timely file the lawsuit against the hospital and its employees violated DR 6-101(A)(3). In order to violate DR 6-101(A)(3), an attorney's conduct must constitute neglect. "Neglect involves an attorney's failure to advance a client matter for which he has been retained. Neglect is different from negligence and usually requires a pattern of disregarding obligations or repeated omissions by an attorney." Guttenberg & Snyder, The Law of Professional Responsibility in Ohio (1992) 201. Even though the failure to timely file a lawsuit, standing alone, may not rise to a violation of DR 6-101(A)(3), we believe that respondent's failure to timely file the lawsuit coupled with his continued deception of his clients does constitute a violation of DR 6-101(A)(3). We reached the same result in *Cuyahoga Cty. Bar Assn. v. Caywood* (1991), 62 Ohio St.3d 185, 580 N.E.2d 1076, where the attorney missed the statute of limitations and then deceived his client about the status of the case. See, also, *Toledo Bar Assn. v. Westmeyer* (1988), 35 Ohio St.3d 261, 520 N.E.2d 223; *Columbus Bar Assn. v. Nichols*, *supra*.

{¶ 16} Therefore, we hold that respondent violated DR 1-102(A)(4), 6-101(A)(3) and 6-102(A). Even though we have found an additional violation, we agree with the sanction recommended by the board. Accordingly, we order that

respondent be suspended from the practice of law in the state of Ohio for six months and that the suspension be stayed.

*Judgment accordingly.*

DOUGLAS, WRIGHT, RESNICK and PFEIFER, JJ., concur.

MOYER, C.J., F.E. SWEENEY and COOK, JJ., dissent.

_____

**MOYER, C.J., dissenting.**

{¶ 17} On March 11, 1991, respondent committed an act of negligence when he permitted the statute of limitations governing a client's action to pass without filing a complaint. Rather than limit his misconduct to a single act of malpractice, respondent engaged in a lengthy course of fraud and deception designed to cover up his mistake.

{¶ 18} On May 10, 1991, the named defendant in the underlying lawsuit moved to dismiss and the respondent did not inform his clients of his error. On September 12, the defendant's motion was granted and respondent did not inform his clients. On that same day, respondent moved to amend the complaint so that some claim might survive and again he did not inform his clients. On November 24, 1992, respondent finally communicated with his clients but still failed to be truthful.

{¶ 19} Respondent admitted to missing the statute of limitations and to failing to inform his clients in a "timely manner." Even this admission is not totally honest. Respondent never informed his clients; in fact he misled them. It was not until respondent had been discharged and new counsel retained that respondent's failures were discovered. Respondent now argues that his cover-up was the result of unusual circumstances unique to this case. He attempts to justify his conduct rather than accept personal responsibility for his actions.

{¶ 20} Respondent argues that a public reprimand is the appropriate sanction because his malpractice was committed on a matter involving the relative

of a former associate whose performance he had criticized when he suggested the associate leave the law firm.  He suggests that his desire to avoid the embarrassment of admitting malpractice under these circumstances is "a justification for a public reprimand."

**{¶ 21}** The majority adopts the board's recommendation for a six-month suspended suspension without any provision for monitoring or continuing review of respondent's conduct.   I cannot accept such an inadequate sanction for respondent's conduct.  We should all be troubled by the increasing number of cases in which attorneys have deceived or lied to their clients.  In my view there are few violations of the Code of Professional Responsibility that are more severe than a violation of DR 1-102(A)(4).   As the majority indicates, we have stayed suspensions of attorneys' licenses even where the attorneys' conduct constituted a violation of DR 1-102(A)(4).  However, the case before us is an excellent example of why that disposition is no longer appropriate, where the attorney engages in a course of conduct involving dishonesty, deceit, or misrepresentation.

**{¶ 22}** Had their lawsuit gone forward, the clients of respondent in this case might have received no more than the amount of the settlement.  It was not because respondent came forward and admitted his deceit that his clients received something more than that; it was because they were forced to seek new counsel in order to discover that their attorney had violated his oath of office and the Code of Professional Responsibility to their detriment.  And for that, our disciplinary system tells respondent not to do that again.

**{¶ 23}** It is time for a clear message from this court that when a lawyer engages in a course of conduct that violates DR 1-102(A)(4), we will impose a sanction which actually suspends the attorney from the practice of law for an appropriate period of time.  That message should be sent to those who question why lawyers who lie to clients are permitted to continue practicing law without

interruption, and to lawyers who apparently are assuming that the benefit for deceiving clients is worth the risk of our sanction.

{¶ 24} For the foregoing reasons I would suspend respondent from the practice of law for six months.

F.E. SWEENEY and COOK, JJ., concur in the foregoing dissenting opinion.

_____