[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 144.]

TOLEDO BAR ASSOCIATION *v*. DZIENNY.

[Cite as *Toledo Bar Assn. v. Dzienny,* 2002-Ohio-3611.]

*Attorneys at law—Misconduct—Eighteen-month suspension with one year of sanction suspended on condition that attorney commit no further misconduct—Preparing inter vivos trusts for client and naming himself as a beneficiary.*

(No. 2002-0294—Submitted May 7, 2002—Decided July 31, 2002.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 01-57.

**Per Curiam.**

{¶1} We must decide in this case whether an attorney who prepared inter vivos trusts for a client and named himself as a beneficiary should be suspended indefinitely from the practice of law in Ohio or receive a lesser penalty. The Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") recommended that respondent, Michael A. Dzienny of Toledo, Ohio, Attorney Registration No. 0037618, receive an indefinite suspension for having violated DR 1-102(A)(6) (engaging in conduct that adversely reflects on an attorney's fitness to practice law), 5-101(A)(1) (accepting professional employment if the attorney's judgment may be affected) and (2) (preparing a client's inter vivos trust in which the attorney is named beneficiary), 5-105(A) (accepting professional employment if attorney's independent judgment on client's behalf could be compromised), and 6-102(A) (attempting to evade liability for malpractice). Upon review, however, we are convinced that an eighteen-month suspension, with one year stayed on the condition that respondent commit no further misconduct, is a more appropriate penalty.

**{¶2}** In 1997 and 1998, Sally Wiant consulted respondent, a friend of hers, enlisting his professional assistance in planning her estate. During this time, Wiant also applied to a carrier for life insurance on her mother, and through the services of another friend, an insurance agent, the carrier approved her application for $4 million in coverage. Wiant bought a policy with a $750,000 face value, but the insurance agent encouraged her to use the remaining amount of potential coverage as an investment opportunity. Wiant was interested but did not want the responsibility of shouldering all of the premium that the purchase would require. The insurance agent then approached respondent, with whom he was also friends, and suggested that respondent buy as an investment the insurance for which Wiant's application had been approved.

**{¶3}** Respondent agreed to the deal, and he and the insurance agent invited another of their friends, William D. Free, to participate. Respondent then prepared three inter vivos, revocable trusts with Wiant being the trustor for each. For the first trust, "Sally's Trust," respondent designated Wiant as the trustee and her niece and nephew as the beneficiaries. For the second trust, the "WFD Trust," respondent designated Wiant and Free trustees and Wiant, Free, and himself the beneficiaries. For the third trust, the "SAW Trust," respondent designated Free trustee and Free and himself the beneficiaries.

**{¶4}** Respondent did not advise Wiant or Free, for whom he had also provided professional services, to consult independent legal counsel before they agreed to these trust instruments. And in an attempt to limit his professional liability in having prepared the WFD and SAW trusts, respondent included in each trust agreement an acknowledgement that Wiant had been advised of conflicting interests in the arrangement, that she nevertheless intended respondent to be beneficiary, and that she would hold respondent harmless as to any future claims arising out of the arrangement.

{¶5} On December 18, 1997, the insurance carrier issued five life insurance policies with face values totaling $3.25 million that named Sally's trust as owner and beneficiary. In March 1998, Wiant, as trustee of that trust, changed the ownership and beneficiaries of four of the five insurance policies. The ownership and beneficiaries of one policy with a $750,000 face value she left unaltered. She amended a second policy with a face value of $500,000 by naming the WFD trust the owner and beneficiary, such that she, Free, and respondent each became responsible for one-third of the $27,561 annual premium and entitled to share one-third of the proceeds. The other three policies, which together had a face value of $2 million, Wiant amended to make the SAW trust the owner and beneficiary. Free and respondent thus each became responsible for one-half of the $110,240 annual premium for the three policies and entitled to one-half of proceeds that they produced.

{¶6} Respondent and Free had agreed to these arrangements before all these policies were issued as part of their plan to reap the benefits of the life insurance that Wiant's application had generated. Wiant facilitated these arrangements but afterward reconsidered her involvement when she came to understand the implications more clearly. In January 1999, with the help of another attorney, Wiant, in her capacity as trustor of the WFD and SAW trusts, executed identical amendments to both in which she appointed herself sole trustee and their sole beneficiary. After providing notice of these amendments to Free and respondent, Wiant revoked the WFD and SAW trusts, and the four insurance policies subsequently lapsed for premium nonpayment. By that time, respondent and Free had each paid about $125,000 in premiums.

{¶7} Wiant later complained to relator, the Toledo Bar Association, and on June 11, 2001, relator filed a complaint charging respondent with professional misconduct. A panel of the board heard the cause and found the facts as stated. The panel concluded that respondent had accepted employment in which

conflicting interests could affect his independent professional judgment, prepared an inter vivos trust instrument naming himself a beneficiary, and had attempted to evade malpractice liability, all of which adversely reflected on his fitness to practice law and, therefore, violated the cited Disciplinary Rules.

{¶8} In deciding a penalty, the panel considered that respondent had previously received a six-month suspension from the practice of law, itself suspended, for having missed a statute of limitations in a medical malpractice claim and for having deceived his clients about it. *Toledo Bar Assn. v. Dzienny* (1995), 72 Ohio St.3d 173, 648 N.E.2d 499. The panel also considered six letters in which respondent's colleagues and acquaintances commended his professional competence, character, and community involvement, and noted that respondent had cooperated in the disciplinary proceedings. The board then rejected the penalty jointly recommended by the parties—an eighteen-month suspension with one year stayed—and recommended instead that respondent be suspended from the practice of law indefinitely. The board adopted the recommendation of the panel.

{¶9} Upon review, we agree with the board's findings of misconduct, but we consider the penalty of an indefinite suspension too severe. The board's recommendation was largely the result of the panel's suspicions that "there is more to this situation than [r]espondent chose to tell" and that he "would not have made a large investment in this poor and speculative venture unless he had good reason to believe that [Wiant's] mother would have an early death." We, however, see no clear and convincing evidence in the record that permits these inferences of deception and foul play.

{¶10} Respondent testified at the hearing, and Wiant's deposition was submitted, but the main evidence of his misconduct consists of comprehensive fact stipulations of the parties and respondent's admission that he committed the disciplinary violations as charged. These violations stem from respondent's having drafted the trust documents and his relationship to the other investors; they do not

result from illegal investment activity, at least not any that relator contemplated in its complaint. Relator continues to advocate the penalty jointly recommended as an appropriate sanction.

{¶11} Respondent conceded that he considered the investment that the insurance agent proposed a highly unusual arrangement at first, but with research, he determined that Wiant could legally assign her insurable interest to others. Relator is satisfied with that assessment, and we have no evidence upon which to disagree. However distasteful respondent's efforts to invest in life insurance covering his friend's mother were, that fact alone will not support the sinister motive the board ascribes to him, and we will not augment his penalty because of it.

{¶12} Respondent's prior disciplinary offense notwithstanding, we are convinced that his remorse, character evidence, and cooperation justify the penalty recommended by the parties. Accordingly, respondent is suspended from the practice of law for a period of eighteen months, with one year of that sanction suspended on the condition that he commit no further misconduct. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., DOUGLAS, NADER, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

PFEIFER and COOK, JJ., dissent.

ROBERT A. NADER, J., of the Eleventh Appellate District, sitting for RESNICK, J.

_____

**COOK, J., dissenting.**

{¶13} Because I would adopt the recommendation of the panel and the board and indefinitely suspend Dzienny from the practice of law, I respectfully dissent.

PFEIFER, J., concurs in the foregoing dissenting opinion.

_____

James E. Goranson and Louise A. Jackson, for relator.

James D. Caruso, for respondent.

_____